IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1359-B-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on the parties' cross motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's original *Motion for Summary Judgment* (Doc. 22) be **DENIED AS MOOT**, Plaintiff's *Amended Motion for Summary Judgment* (Doc. 25) be **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 23) be **DENIED**. The Commissioner's decision should be **REVERSED AND REMANDED** for further proceedings.

### I. BACKGROUND[1]

A.   **Procedural History**

Mary Adams seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed applications for DIB and SSI in October 2008. (Tr. 10, 154-168). Plaintiff alleged a disability onset date of

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

December 2003, due to post polio syndrome, brain tumors, depression, and high blood pressure. (Tr. 10, 161, 173-74). Plaintiff's applications were denied at all administrative levels, and she now seeks review in this Court. (Tr. 1-6, 10, 25-28, 84-91, 98-103). Notably, the Commissioner ultimately found Plaintiff disabled and entitled to benefits in May 2011 based on a subsequent application. (Doc. 22, Exh. A).

**B.    Factual History**

Plaintiff was 49 years old at the time of her alleged onset date. (Tr. 161). She has a twelfth grade education and past relevant work as a sales clerk, insurance claims supervisor, and UPS worker. (Tr. 15-16, 175, 183).

In January 2007, Plaintiff was seen at the hospital for (1) daily severe headaches, which began in 2003 related to benign brain tumors some of which were surgically removed, (2) a tremor in her right upper extremity, (3) anxiety, and (4) depression. (Tr. 300-01, 371). In 2008, it was noted that Plaintiff was suffering from post-polio syndrome, which manifested in leg pain, based on the disease she had between the ages of two and six years old. (Tr. 321, 331, 333, 347). During this time, Plaintiff also was treated for physical and mental abuse, child molestation, rape at age 13, post-traumatic stress disorder, anxiety, and depression. (Tr. 321, 324, 450-504, 515-635, 670-735).

Commencing in approximately 1998, Dr. Louise Kwan became Plaintiff's treating physician. (Tr. 177, 393, 402, 498). From that time through 2009, Dr. Kwan saw Plaintiff for, *inter alia*, hypertension, obesity, meningioma (benign, encapsulated tumor) with headaches,

2

anxiety, stress, and depression.[2] (Tr. 51, 388-403, 447, 661-62, 667). In December 2009, Dr. Kwan stated that Plaintiff had long-term problems with headaches, and in 2003, the severe headaches affected her vision, causing her to go to the emergency room. (Tr. 741). Dr. Kwan noted that Plaintiff was then diagnosed as having meningioma tumors, a neurosurgeon operated on one meningioma that could not be completely excised, and she had another meningioma as well. (Tr. 741). Dr. Kwan stated that Plaintiff's continued headaches affected her ability to concentrate, her memory, and her energy level, and as a result, she had not been able to work. (Tr. 741). Dr. Kwan also noted that Plaintiff had problems with dizziness, fatigue aggravated her symptoms, she had not been able to exercise and was thus overweight due to her brain tumors, which were not completely operable. (Tr. 741).

In December 2008, Dr. John Lehman, Ph.D., examined Plaintiff at the state's request, and noted her unsteady gait, which Plaintiff said was attributable to post-polio syndrome, and significant right hand tremor, which Plaintiff attributed to an inoperable brain tumor. (Tr. 405). Dr. Lehman diagnosed Plaintiff with severe major depressive disorder and assigned her a GAF score of 40.[3] (Tr. 407).

That same month, Plaintiff had a consultative physical examination by Dr. Muhammad Farooqi who noted that Plaintiff had sustained fractures in her left foot and ankle in 2003. (Tr. 61-62, 409). Plaintiff's examination was generally unremarkable, but she was unable to squat

---

[2] All medical terms have been defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000) available on Westlaw.

[3] GAF stands for Global Assessment of Functioning, and is a scale used to determine a patient's psychological functioning on a 1 to 100 scale, with 100 being superior functioning. *Diagnostic and Statistical Manual of Mental Disorders IV-TR* (4th ed.).

and rise from a squatting position and had a positive straight leg raise at less than 35 degrees on both sides. (Tr. 411).

In February 2009, a consulting psychologist diagnosed Plaintiff with major depressive disorder and determined that she had moderate limitations in her abilities to (1) understand, remember, and carry out detailed instructions, (2) maintain concentration, persistence, and pace, (3) maintain social functioning, (4) complete a normal work week, and (5) respond appropriately to changes in the work setting. (Tr. 419, 426, 430-31).

**C.**     **Administrative Hearing**

At Plaintiff's hearing, a medical consultant, Dr. Charles Moore, testified that he did not see any support in the medical record for a diagnosis of post-polio syndrome, which was a difficult diagnosis to make. (Tr. 59-60). Dr. Moore stated that he had no explanation for why Plaintiff fell so much, her neurological examinations were normal, and he assessed her residual functional capacity ("RFC") at the light level. (Tr. 62-63). An expert psychologist, Dr. Alvin Smith, testified that Plaintiff had no mental or emotional impairment that met a Listing, and her mental impairments had only a minimal impact on her ability to perform various job functions. (Tr. 67-70).

**D.**     **ALJ's Findings**

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since December 2003. (Tr. 12). At step two of the sequential analysis, the ALJ found that Plaintiff's benign brain tumor, post-polio syndrome, anxiety, and depression were severe impairments. (Tr. 12). At step three, the ALJ determined that Plaintiff had no impairment or combination of impairments that met or equaled a Listing. (Tr. 12-13). The ALJ next ruled that

Plaintiff had the RFC to perform light work, limited to only occasional posturing and no climbing of ladders, ropes, or stairs. (Tr. 13). At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as an inside sales order clerk as actually and generally performed. (Tr. 15-16).

## II. ANALYSIS

A. **Legal Standards**

1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

2. **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, Plaintiff is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with Plaintiff to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that Plaintiff is disabled or is not disabled. *Id.* Once Plaintiff satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the

national economy that Plaintiff is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.     Issues for Review**

Plaintiff raises four issues for review, not all of which need to be addressed for the reasons discussed below. The issues presented, as reworded and reorganized by the Court, are as follows: (1) whether the ALJ erred in failing to address the medical opinion of Plaintiff's treating physician; (2) whether the ALJ erred in failing to address the medical opinions given by various state agency and examining sources; (3) whether the case should be remanded with instructions for the ALJ to obtain a medical opinion regarding the onset date of Plaintiff's disability; and (4) whether the ALJ erred in failing to address whether Plaintiff meets Listing 11.11 governing post-polio syndrome. (Doc. 25 at 9-14).

As to Plaintiff's first issue, she argues that the ALJ erred as a matter of law in failing to address Dr. Kwan's medical opinion and apply the six-factor test set forth in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) before declining to give weight to her opinion. *Id.* at 9-11. Defendant responds that Dr. Kwan's opinion that Plaintiff is disabled is not entitled to controlling weight because the six-factor test does not apply to opinions that a claimant cannot work, and Dr. Kwan's finding of disability is contradicted by the evidence of record. (Doc. 24 at 8; Doc. 26 at 8).

When a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic

7

techniques and is not inconsistent with the other substantial evidence, the Commissioner must give that opinion controlling weight. *Newton*, 209 F.3d at 455. Nevertheless, a treating physician's opinion may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455-56. However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)]." *Id*. at 453, 455 (emphasis in original). Under that section, before the Commissioner declines to give any weight to a treating physician's opinion, he must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 455-56. When an ALJ fails to apply the six-factor test, the matter should be remanded for that analysis. *Id.* at 456. The requirement that the ALJ discuss the six factors set forth in *Newton* and sections 404.1527(c), 416.927(c) applies only to medical opinions, not to a doctor's conclusory statement that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In this case, the ALJ made only a passing reference to Dr. Kwan's treatment of Plaintiff, noting that "[m]edical records from Louise A. Kwan, MD, show that the claimant has been treated for hypertension, anxiety and depression and other common ailments." (Tr. 15). The

8

ALJ did not cite to the six-factor test set forth in sections 404.1527(c) and 416.927(c) or discuss Dr. Kwan's December 2009 opinion regarding the effects of Plaintiff's severe headaches, difficulties with concentration, memory problems, low energy, dizzy spells, fatigue, weight, and inoperable brain tumors on her ability to work. (Tr. 741); *cf. Frank*, 326 F.3d at 620 (noting that a doctor's conclusory opinion that the claimant could not work was not a medical opinion that required application of the six-factor *Newton* test). Moreover, there is no reliable medical evidence in the record from a treating or examining physician that contradicted Dr. Kwan's opinion. *Newton*, 209 F.3d at 453.

Accordingly, remand is required so that the ALJ can properly consider Dr. Kwan's opinion as to Plaintiff's abilities. *Id.* at 456; *see also Peacock v. Astrue*, 2012 WL 1003776, *4 (N.D. Tex. 2012) (Kaplan, M.J.) (reversing and remanding where the ALJ failed to articulate any reason for rejecting the opinions of the treating physician); *Yearout v. Astrue*, 2010 WL 4860784, *10 (N.D. Tex. 2010) (Ramirez, M.J.) (reversing and remanding where the ALJ did not apply the six-factor test); *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D. Tex. 2010) (Ramirez, M.J.) (reversing and remanding where the ALJ failed to mention the opinion of the treating physician or provide good cause for rejecting the opinion).

Because the ALJ erred in failing to address Dr. Kwan's opinion, the Court need not address Plaintiff's remaining claims because she can raise those issues before the ALJ on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim). Indeed, Plaintiff's argument regarding the correct onset date did not even become ripe until she was awarded benefits in May 2011, after the Appeals Council had denied her appeal in this case. (Tr. 1-3); *see generally Spellman v. Shalala*,

1 F.3d 357, 361-63 (5th Cir. 1993) (remand required for redetermination of onset date of claimant's disability with assistance of medical advisor, where claimant's mental impairment was of slowly progressive nature and medical evidence was ambiguous with regard to disability onset date).

### III.  CONCLUSION

For the reasons set forth herein, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 22) be **DENIED AS MOOT**, Plaintiff's *Amended Motion for Summary Judgment* (Doc. 25) be **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 23) be **DENIED**.  The Commissioner's decision should be **REVERSED AND REMANDED** for further proceedings.

**SO RECOMMENDED** on May 15, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE